UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL WILLIAM MARTINDALE,<br><br>    Defendant. | Case No. 4:15-cr-205-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Defendant Martindale is charged with three counts of criminal activity: (1) Count One alleges that he possessed a sawed-off shotgun; (2) Count Two alleges that he possessed firearms despite being a drug user; and (3) Count Three alleges that he possessed methamphetamine and heroin. All three charges stem from a search of an automobile he was driving – the search turned up the firearms, illegal drugs, and various other items indicative of drug distribution.

Martindale has moved to suppress the firearms and heroin on the ground that the search of the car violated his Fourth Amendment rights. The Court heard testimony on August 11, 2016, and took the matter under advisement. For the reasons expressed below, the Court will deny the motion to suppress.

## FACTUAL FINDINGS

On June 19, 2015, Bonneville County Sheriff's Lieutenant Foster had a felony arrest warrant for Brook Black, who was believed to be driving a grey Dodge truck. Over

**Memorandum Decision & Order – page 1**

his radio, Lt. Foster heard dispatch call Deputy Hillier to a residence at 1880 S. Falcon Drive in Ammon, Idaho to serve an arrest warrant on defendant Michael Martindale. Dispatch said that Martindale might be driving a grey, 1997 Dodge Dakota pickup truck, the same truck Lt. Foster was looking for.  Because Lt. Foster and Deputy Hillier were both in the vicinity of 1880 S. Falcon Dr., they decided to stake out the residence together.

They parked in different locations and watched the residence hoping to catch either Black or Martindale.  Deputy Hillier was located near the intersection of 17th Street and Falcon. Eventually, Lt. Foster observed two males exit the residence at 1880 S. Falcon and get into the Dodge truck. One male had carried a black bag from the house and placed it into the back of the truck before getting into the driver's seat.

Although the driver was subsequently identified as Martindale, Lt. Foster was unable to identify the driver from his vantage point.  Lt. Foster advised Deputy Hillier of what he observed.  Martindale drove the Dodge pickup north on Falcon towards 17th Street, where Deputy Hillier was located.

While Martindale was waiting at the intersection in traffic, his window was down, and Deputy Hillier was able to get a good look at him.  Using Martindale's driver's license photograph, Deputy Hillier positively identified Martindale as the driver of the Dodge truck. When Martindale turned west on 17th, Deputy Hillier pulled out onto the road behind him.

Martindale immediately moved into the turn lane and pulled into the parking lot of a gas station connected to a supermarket. Deputy Hillier activated his overhead lights and stopped Martindale in the gas station parking lot.

Deputy Hillier approached the driver's door and immediately had Martindale exit the vehicle. He advised Martindale that he was under arrest for driving with a suspended license and advised him of the three warrants for his arrest. Martindale admitted he did not have a driver's license and that he had warrants for his arrest. Deputy Hillier secured Martindale in his patrol car.

Martindale's passenger did not have any identification. Deputy Hillier called for a tow company to respond for the truck and began a vehicle inventory. In the bed of the truck, Deputy Hillier located a black bag containing a sawed off shotgun and two kinds of ammunition. Also in the bag were gloves, an empty holster, and a hunting knife. Inside the driver's door, Deputy Hillier located controlled substances and other material that appeared to be related to drug trafficking.

Because Deputy Hillier had discovered evidence of crimes, he then began to interrogate Martindale about what he had found. The audio portion of the video reveals that Deputy Hillier listed for Martindale the items he found – an illegal shotgun and drugs among them – and noted that he had three warrants for Martindale's arrest and that Martindale was driving without a license. He tells Martindale that the officers had been watching his home, saw him come out with a bag get into his truck and leave, and that consequently the traffic stop was made and "we are having this conversation."

**Memorandum Decision & Order – page 3**

Deputy Hillier testified that he when he decided to impound the vehicle, he was following the official towing policy of the police department contained in Exhibit 1. That "Vehicle Towing Policy" directs:

> Whenever a person in charge or in control of a vehicle is arrested, it is the policy of this office to provide reasonable safekeeping by storing the arrestee's vehicle subject to the exceptions described below. However, the vehicle shall be stored . . . when the community caretaker doctrine would reasonably suggest that the vehicle should be stored, for example, the vehicle would present a traffic hazard if not removed or due to a high crime area the vehicle would be in jeopardy of theft or damage if left at the scene.

*See Tow Policy (Exhibit 1).* The policy further provides:

> The following are examples of situations where consideration should be given to leaving a vehicle at the scene in lieu of storing, provided the vehicle can be lawfully parked and left in a reasonably secured and safe condition:
> - Traffic related warrant arrest.
> - Situations where the vehicle was not used to further the offense for which the driver was arrested.
> - Whenever the licensed owner of the vehicle is present and is willing and able to take control of any vehicle not involved in criminal activity, or designates another person to take control of the vehicle.
> - Whenever the vehicle otherwise does not need to be stored and the owner requests that it be left at the scene.

## LEGAL STANDARDS

The impoundment of a vehicle is a seizure within the meaning of the Fourth Amendment. *U.S. v. Torres,* 2016 WL 3770517 (9th Cir. July 14, 2016). But under the "community caretaking" doctrine, police may, without a warrant, impound and search a motor vehicle "so long as they do so in conformance with the standardized procedures of the local police department and in furtherance of a community caretaking purpose, such as promoting public safety or the efficient flow of traffic." *Id.* at *3. This requirement

**Memorandum Decision & Order – page 4**

ensures that impoundments are conducted "on the basis of something other than suspicion of evidence of criminal activity." *Id.*  "[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4 (1990).  The Government bears the burden of establishing that a vehicle's impoundment and search are justified under an exception to the warrant requirement. *Torres, supra.*

## ANALYSIS

Here, the police officers impounded the car in accordance with their standardized towing policy.  Neither driver nor passenger could operate the car.  Deputy Hillier testified that Martindale asked him to let the passenger take control of the car.  Before making the decision to impound the car, Deputy Hillier determined that the passenger had no driver's license or other form of identification and so could not take control of the vehicle. While Martindale's counsel argues that Martindale urged the officers to contact the vehicle's owner – Martindale's mother – there is nothing in the towing policy or the law that requires officers to track down the vehicle's owner before deciding whether to impound the car.  The towing policy itself states that an officer can give "consideration" to leaving the vehicle with the owner when the owner is "is present and is willing and able to take control of any vehicle not involved in criminal activity" or when the owner "designates another person to take control of the vehicle."  Before making the decision to impound the vehicle, Deputy Hillier determined that Martindale was not the owner, that the owner was not present, and that the owner's address was at a location at least 45 minutes distant.  Thus, Deputy Hillier was following the police department's towing

**Memorandum Decision & Order – page 5**

policy, as quoted above. Moreover, the vehicle was involved in criminal activity as it was being driven illegally by a driver who did not have a driver's license.

Martindale argues that Deputy Hillier's statements to Martindale (heard on the video) show that Deputy Hillier was all along looking for illegal evidence and the inventory search was a sham. The Court disagrees. The conversation that Martindale refers to occurred only after Deputy Hillier had searched and found the illegal items. Deputy Hillier was now interrogating Martindale about the items – the conversation does not demonstrate that the inventory search was a ruse designed to evade the warrant requirement.

The Government has carried its burden of showing that the inventory search was done pursuant to a standardized towing policy that falls within the "community caretaking" exception to the warrant requirement, and did not constitute "rummaging around for evidence of a crime." Accordingly, the motion to suppress will be denied.

## ORDER

In accordance with the Memorandum Decision above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to suppress (docket no. 20) is DENIED.



DATED: August 11, 2016

_____
B. Lynn Winmill
Chief Judge
United States District Court

**Memorandum Decision & Order – page 7**